UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| DAVID VANCE | ) | |
| | ) | |
| V. | ) | NO. 2:15-CV-45 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for disability insurance benefits under the Social Security Act was denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. Both Plaintiff and Defendant Commissioner have filed Motions for Summary Judgment [Docs. 14 and 17].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff alleges a disability onset date of January 20, 2011. At that time, Plaintiff was 48 years of age, a "younger" individual under the regulations. As of August 21, 2012, he entered the category of an individual "approaching advanced age." 20 C.F.R. Ch. III, Pt. 404, Subpt. P. App. 2, § 200.00(g) and (h)(1). He has a high school education. No one contends that he can perform any of the occupations which constitute his past relevant work. Under the Medical-Vocational Guidelines, also known as the "Grid," a younger individual who has Plaintiff's educational background and work experience would not be disabled even if limited to sedentary work, which requires lifting no more than 10 pounds. However, an individual of advanced age with the Plaintiff's vocational characteristics would be disabled if limited to sedentary work. *Id.* at §§ 201.21 and 201.14.

Plaintiff's medical history is summarized in the Commissioner's brief as follows:

> An undated treatment note from late January 2011 shows Plaintiff saw Robert M. Harris, M.D., after falling off a ladder and sustaining a left heel fracture (Tr. 219). Upon examination, Plaintiff was nontender in his thoracic lumbar spine and had full range of motion in his left hip and knee (Tr. 219). Plaintiff had decreased range of motion in his left ankle with swelling (Tr. 219). He could flex and extend his toes, and his sensation was intact to light touch (Tr.

219). Plaintiff saw Kelly L. Thompson, a nurse practitioner, in Dr. Harris's office, on February 1, 2011, and February 8, 2011, for follow up (Tr. 218, 215). Ms. Thompson noted Plaintiff could flex and extend his toes, and she found some swelling (Tr. 215, 218). Plaintiff took injections daily, and he took pain medication sparingly and needed no refills (Tr. 215, 217). His swelling had decreased significantly by February 15, 2011 (Tr. 214).

Plaintiff underwent surgery on his left heel on February 23, 2011 (Tr. 190-207). During his three-day hospital stay, Plaintiff was diagnosed with hypertension and Type 2 diabetes, and he was given medications for these conditions (Tr. 190). Upon discharge, Plaintiff was told to be non-weightbearing on his left foot and use a walker (Tr. 190). On March 8, 2011, Plaintiff followed up with Ms. Thompson after his surgery (Tr. 212). Ms. Thompson noted he had some mild swelling and mild intermittent drainage from his incision; however, his incision was healing well (Tr. 212). Plaintiff told Ms. Thompson he took his pain medication sparingly at his March 17, 2011 appointment, and she wrote that his incision was well-healed (Tr. 211). A left heel x-ray on April 5, 2011, showed a healing fracture (Tr. 209).

On January 25, 2012, Plaintiff presented to Dry Creek Medical Center (Dry Creek), complaining of back and hip pain (Tr. 224, 247). Plaintiff reported he was lifting boxes when he hurt his back (Tr. 224, 226, 247, 249). Upon examination, Plaintiff had severe lumbar spine tenderness with motion and a limp on his left side (Tr. 226, 249). The diagnosis was lumbago, or low back pain, and Plaintiff received an injection and a muscle relaxant (Tr. 226, 249). In a disability report dated March 6, 2012, Plaintiff alleged disability based on a fractured left foot, staph infection after surgery, hypertension, and back and hip pain (Tr. 134). In a function report dated March 29, 2012, Plaintiff wrote he could not walk on rough ground or hills, climb a ladder, or climb more than two or three steps (Tr. 150). He had no problems with personal care, and he cooked, cleaned, did laundry, drove, went outside daily, shopped, and handled his own finances (Tr. 151-53). He talked on the phone daily and visited others weekly (Tr. 154). Plaintiff returned to Dry Creek on March 29, 2012, for blood pressure medication refills and a blood sugar check (Tr. 244). Plaintiff stated he was doing well except for continued foot pain, and he denied having back pain (Tr. 244-45). On April 3, 2012, Plaintiff had left foot and ankle pain with an antalgic gait (Tr. 241). He denied back pain or joint pain (Tr. 241). Plaintiff's blood sugar was high, and he reported he had stopped taking his diabetic medication and did not follow a diet (Tr. 242). His blood pressure was controlled with medication (Tr. 242).

Krish Purswani, M.D., performed a consultative examination and medical record review on April 4, 2012 (Tr. 229-232). Plaintiff told the doctor he was laid off in January 2011, a few days before his heel injury (Tr. 230). Upon examination, Dr. Purswani wrote Plaintiff appeared comfortable and in no apparent distress (Tr. 230). His gait and station were normal, and he did not use an assistive device (Tr. 230). He was able to get on and off the examination table without help (Tr. 230). Plaintiff had no tenderness in his neck, back, shoulders,

elbows, wrists, hands, knees, and feet (Tr. 230-31). He had normal range of motion in his neck, back, shoulders, elbows, wrists, hands, hips, knees, and right ankle (Tr. 231). Plaintiff's left ankle was larger than his right, and he reported pain during a stability check (Tr. 29). He had reduced range of motion in his left ankle (Tr. 231). Plaintiff had full strength in his upper and lower extremities, negative Romberg test, and normal bilateral toe strength (Tr. 232). His heel strength was reduced on the left and he was unable to stand on his left foot, but he could stand alone on his right foot (Tr. 232). Plaintiff failed tandem gait testing (Tr. 232). Dr. Purswani assessed left heel pain, statuspost reduction internal fixation of left heel, history of left heel fracture, sporadic low back pain, and diabetes (Tr. 232). She opined Plaintiff could lift 25 pounds occasionally, stand and walk for 3 hours of the day, sit for 8 hours, and manage his own affairs (Tr. 232).

On May 7, 2012, Plaintiff returned to Dry Creek (Tr. 237). He had joint pain in his ankle and foot, but he took only over-the-counter medications and declined a prescription for pain medication (Tr. 238). His gait was antalgic on examination (Tr. 238). On June 14, 2012, Denise Bell, M.D., a state agency medical consultant, opined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and he could stand, walk, and sit for 6 of 8 hours (Tr. 68). He was limited in his ability to push and pull with his left lower extremity (Tr. 68). The doctor opined Plaintiff could frequently climb ramps, stairs, ladders, ropes, and scaffolds (Tr. 68). He could frequently balance, stoop, kneel, crouch, and crawl (Tr. 68-69).

At his July 6, 2012 visit to Dry Creek, Plaintiff's diabetes was improved despite his admission that he did not watch his diet (Tr. 269). Plaintiff complained of joint pain, but no examination findings of joint pain were noted (Tr. 269). On July 16, 2012, Plaintiff reported left ankle and foot pain, which was moderate with motion (Tr. 267). On August 3, 2012, Paul R. Stumb, M.D., a state agency medical consultant, issued identical findings to those of Dr. Bell (Tr. 74-83). At Plaintiff's November 14, 2012 visit to Dry Creek for medication refills, Plaintiff exhibited no gait disturbance (Tr. 262).

[Doc. 18, pgs. 2-5].

At the administrative hearing, after listening to the Plaintiff's testimony, the ALJ questioned Dr. Robert Spangler, a vocational expert ["VE"]. After Dr. Spangler identified the requirements of Plaintiff's past relevant work, the ALJ asked him to assume the following:

> An individual with the same age, education and past relevant

4

> work experience as the claimant. That is an individual who was a younger individual, but has subsequently entered the approaching advanced age category, with a GED high school education and previous work experiences you've just described. Assume further this said hypothetical individual is only capable of performing work within the following functional limitations: light work, except standing and walking is limited to no more than three hours total out of the work day. No more than the occasional pushing and pulling with the left upper-left lower extremity, no climbing of ladders, ropes and scaffolds, occasional climbing of stairs, occasional balancing, stooping, kneeling and crouching, no crawling, no concentrated exposure to wet conditions. If limited in this manner that would rule out a return to past relevant work. Would there be any other jobs that the hypothetical individual could perform in the regional or national economy?

(Tr. at 49-50). Dr. Spangler, referring to the number of jobs such a person could perform, stated the following:

> there's 8,923,517 in the United States, there's 188,140 in the State of Tennessee, give or take, less about 90%, so I would say 10 percent would be the residual, unless other things are added…The biggest single category is a cashier. Not cashier/checker now, but just cashier, like at a restaurant or something. There's [sic] interviewers, production machine tenders, there's some food prep, sitting on the farm animal care, transportation attendant, sit or standing one, personal care attendant, sit or standing one. There's not a lot.

(Tr. 49-51).

For his second hypothetical, the ALJ asked Dr. Spangler to assume the same limitations but with the addition that the person would need to elevate his leg periodically during the workday above the waist. Dr. Spangler said there would be no jobs such a person could perform (Tr. at 51). Plaintiff's representative asked Dr. Spangler if there

5

would be jobs if a restriction was added to the hypothetical that the person would be off task 15% or more of the time in a workday. Dr. Spangler stated there would be no jobs with this additional restriction (Tr. 51). Plaintiff's representative then asked Dr. Spangler if there would be jobs "if an individual were limited and unable to stoop as the claimant testified—stoop, squat or bend…" Dr. Spangler stated this would reduce the number of jobs from 10% to only two or three percent (Tr. 52).

On July 19, 2013, the ALJ issued his hearing decision. He first outlined the five step sequential evaluation process required by 20 C.F.R. 404.1520(a), which includes at the third step a requirement to consider all impairments, whether severe or not, if any severe impairment is present (Tr. 25). He found that the Plaintiff had severe impairments of status-post left ankle fracture and surgery, and a back disorder. He found that the Plaintiff did not have any impairment or combination of impairments which met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26).

The ALJ found that Plaintiff had the RFC to perform light work, except that he is limited to standing and walking no more than a total of three hours in an eight hour workday; occasional climbing of stairs; occasional balancing, stooping, keeling, and crouching; occasional pushing/pulling with the left lower extremity; no climbing of ladders, ropes, or scaffolds; no crawling; and no concentrated exposure to wet conditions (Tr. 27).

He then accurately recounted Plaintiff's statements about his condition, (Tr. at 27),

but found that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms were not entirely credible (Tr. at 28). He then discussed the medical evidence in great detail, beginning with the Plaintiff's fall and surgery for his broken ankle. The ALJ discussed each treatment note from the Plaintiff's treating physician at Dry Creek Medical Center. In this regard he noted that on Plaintiff's first visit, on January 25, 2012, Plaintiff complained of pain in his back and left hip that began when he was lifting. At the next visit on March 20, 2012, the ALJ noted that the Plaintiff denied back pain. At subsequent visits, the Plaintiff's high blood pressure and diabetes improved with medication. He continued to complain of pain in his left ankle. A DOT physical in July 2012 noted subjective pain on flexion of the left ankle. Plaintiff declined prescription pain medication and took Motrin and Aleve for pain (Tr. 28).

The ALJ then discussed the consultative examination by Dr. Purswani on April 4, 2012, noting that his findings, apart from Plaintiff's left ankle, were basically normal (Tr. at 28). Plaintiff's reflexes and strength in his upper and lower extremities were normal. While Plaintiff's toe strength was normal bilaterally, heel strength was reduced on the left. Plaintiff could not stand on only his left foot and failed in a tandem gait test. Dr. Purswani assessed Plaintiff as having left heel pain, status-post open reduction internal fixation of the left heel, a history of left calcaneal fracture, sporadic low back pain and diabetes (Tr. 29).

The ALJ then explained in detail the reasons for his RFC finding and for finding Plaintiff to not be completely credible. He stated that he found the Plaintiff's diabetes

and hypertension to be non-severe, noting that Plaintiff did not attribute limitations to these conditions. He said he was giving Plaintiff "the benefit of the doubt" by finding a severe back impairment when there were no images of the back in the record, and minimal positive medical findings regarding Plaintiff's back. He stated that he had incorporated in his RFC finding some of Plaintiff's allegations regarding his back and heel pain. He noted that the record showed Plaintiff to be neurologically intact and retained good use of the arms and legs.

The ALJ noted that the record did not document conditions which would be expected to result in disabling pain. He referenced Plaintiff's conservative treatment in this regard, his declining prescription pain medication, the fact that no treating source had limited Plaintiff's activities, and the fact that Plaintiff did not require any assistive device to move about. He noted that Plaintiff had not sought ongoing medical treatment for any physical condition. Although Plaintiff had no health insurance, he had been denied treatment or sought low cost health care. Accordingly, the ALJ found that Plaintiff's allegations of disabling pain or other disabling physical symptoms were not supported by the evidence (Tr. 29-30).

The ALJ addressed the weight he gave to the medical opinion evidence. First, he discussed Dr. Purswani, who is the only examining source to give an opinion as to Plaintiff's physical capabilities. The ALJ mentioned the state agency physicians, who found Plaintiff capable of light work, including standing/walking for six (6) hours in an eight (8) hour workday with frequent pushing/pulling with left upper extremity, frequent

8

climbing of ramps/stairs, balancing, stooping, kneeling, crouching and crawling. He noted that he only gave partial weight to the opinions of Dr. Purswani and the state agency physicians, and reduced his RFC finding below any of their findings "to allow for the claimant's allegations" (Tr. 30).

After finding that Plaintiff could not perform any of his past relevant work, he proceeded to Step Five of the evaluation process. He noted that if Plaintiff could perform the full range of light work, the Grid would indicate he was not disabled either as a younger individual, or as an individual approaching advanced age. However, because he could not perform a full range of light work with his other limitations, the ALJ stated that he was relying on the testimony of the VE. With the Plaintiff's RFC, he found that there were 188,140 jobs in the State of Tennessee and 892,391 jobs in the national economy that Plaintiff could perform. Accordingly, he found that Plaintiff was not disabled (Tr. 30-31).

Plaintiff asserts that the ALJ erred in three respects. First, he states that "the ALJ's analysis of Vance's credibility is legally flawed because the ALJ apparently relied on that flawed analysis to discredit Vance's testimony about the need to elevate his foot to avoid painful swelling, remand is required" [Doc. 15, pg. 6]. In this regard, Plaintiff notes that the ALJ asked the VE about whether jobs would exist if the Plaintiff needed to periodically elevate his leg during the workday above his waist. The VE responded that there would be no jobs with that requirement. Plaintiff asserts that the ALJ's decision not to rely on that answer by the VE merits "careful scrutiny." *Id.* Plaintiff insists that his

9

claim that he had to elevate his feet to relieve any swelling caused by being on his feet was "uncontested." *Id.* at 7.

Plaintiff cites, and relies primarily upon, the case of *Rogers v. Comm'r of Social Security*, 486 F.3d 234 (6th Cir. 2007). He quotes *Rogers* as stating that the two-part analysis in the regulations must be followed in evaluating a claimant's symptoms. In the present case seeking disability insurance benefits, this test is set forth in 20 C.F.R. Ch. III, § 404.1529. As described by the Sixth Circuit, "[f]irst, the ALJ will ask whether there is an underlying physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers, supra,* at 247. The Court then states that factors for the ALJ to consider in determining whether a claimant is fully credible

> include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d at 247.

Plaintiff also points out that *Rogers* requires ALJ's credibility determinations to be "support[ed] in the record." *Id.* Plaintiff asserts that the ALJ failed to link facts in the

10

record to finding Plaintiff not to be credible.

The Court notes that in *Rogers*, the record was quite different from the present case. In *Rogers*, there were assessments from three treating physicians, two of whom had collectively treated the plaintiff for twenty years, opining that she had fibromyalgia and rheumatoid arthritis, and was capable of, at best, a severely restricted range of sedentary work. They backed up their assessments with extensive office treatment notes. *Id.* at 237-239. A consultative examiner for the Commissioner also examined Ms. Rogers, and found "she would be unable to maintain full time employment." *Id.* at 239.

Instead of properly considering the opinions of all these treating and examining physicians, the ALJ relied solely on a non-examining state agency physician who opined she could perform medium work. *Id*. The greater part of the opinion in *Rogers* was spent taking the ALJ to task for not properly evaluating this mountain of evidence from treating and examining physicians. As a natural progression of that failure on the part of the ALJ, the Court also found that the ALJ did not state adequate reasons to explain his finding that Ms. Rogers was not credible. Particularly, the Court stated "the ALJ filed to discuss or consider the lengthy and frequent course of medical treatment…" and "placed significance" on the opinion of a non-examining, non-treating physician instead of on her treating physicians. *Id*. at 248-249.

In the present case, the only examining physician who submitted an assessment of Plaintiff's work-related capabilities was Dr. Purswani. Notably, her assessment (Tr. 232) was less restrictive than the ALJ's RFC determination, which included limitations drawn

11

from Plaintiff's allegations (Tr. 30).

As *Rogers* requires, the ALJ must cite to the record to support his credibility determination. In this case, he did just that. Besides discussing Plaintiff's testimony and the medical evidence, the ALJ made specific references to the conservative treatment, over-the-counter pain medication, no limitations imposed by treating sources, Plaintiff declining any prescription pain medication, no requirement of an assistive device to move about, and Plaintiff seeking very little medical treatment for any physical condition (Tr. 29-30).

Plaintiff criticizes the ALJ's mentioning of Plaintiff's "dirty hands." But the ALJ never stated that he relied upon this as a basis for finding Plaintiff was not entirely credible. However, that observation could have been legitimately considered by him on the issue of credibility. See *Williams v. Comm'r of Soc. Sec.,* 93 F. App'x 34, 36-37 (6th Cir. 2004). In any event, the ALJ only mentioned this twice because he mistakenly repeated a paragraph twice in his hearing decision, obviously by accident. (Tr. 27 and 29).

Plaintiff criticized the ALJ for stating that although the Plaintiff did not have health insurance, there was no indication he had been denied low cost treatment or treatment at an emergency room. But the ALJ can certainly take that into account in his credibility determination. This argument is without merit. See *Brown v. Cmm'r of Soc. Sec.*, 2014 WL 835193, at 11-12 (E.D. Tenn. Mar. 3, 2014); see also *Blacha v. Sec'y of Health & Human Servs*., 927 F.2d 228, 231 (6th Cir. 1990) ("Further, [plaintiff's] use of

12

only mild medications (aspirin) undercuts complaints of disabling pain, as does his failure to seek treatment ...."); *Ring v. Comm'r of Soc. Sec.*, No. 1:12–cv–197 (E.D.Tenn. Aug. 21, 2013) ("a claimant's failure to seek treatment undercuts claim of severe symptoms"); *Hashemi v. Comm'r of Soc. Sec.*, No. 11–13629, 2012 WL 3759033, at *13–14 (E.D.Mich., Aug. 6, 2012) ("[I]f Plaintiff were in as much pain as he claimed, he would have sought out intermittent or emergency treatment ... there was no evidence that Plaintiff ever sought out low-cost or free care.").

Plaintiff's second assignment of error is that the VE's answer to the ALJ's hypothetical question "does not constitute substantial evidence because it is facially incoherent and frustrates meaningful review because of its incoherence." [Doc. 15, pg. 13]. The manner in which Dr. Spangler answered the question was to state the number of jobs available if Plaintiff did not have the additional restrictions which limited him to a reduced range of light work, and then reduce them by 90%. Admittedly, that is a somewhat confusing way of answering such a question as opposed to doing the math and giving the final number of jobs in the regional and national economies. However, the bottom line is that 10% of 8,923,517 jobs in the national economy, and 10% of 188,140 jobs in the regional economy constitute a substantial number of jobs. The fact that the ALJ erroneously stated that there were 188,140 jobs in the State of Tennessee as opposed to 18,814 is harmless error, since 18,814 jobs constitutes a substantial number of jobs.

Finally, Plaintiff asserts the ALJ erred in the weight he gave the consultative examiner, Dr. Purswani, because "the finding" of Dr. Purswani, "that Vance's gait and

13

station was [sic] normal is a 'mere scintilla' and does not constitute substantial evidence." [Doc. 15, pg. 15]. Plaintiff says that Dr. Purswani found that the Plaintiff's gait and station were normal, which is what she found when she conducted her physical examination of Plaintiff (Tr. 230). Plaintiff argues, however, that the ALJ erred in relying upon this "finding" by Dr. Purswani because it was inconsistent with other parts of her report of the examination, and because Plaintiff's treating physicians, on occasion at least, mentioned problems with ambulation and gait.

With respect to Dr. Purswani's report contradicting itself, the statement that Plaintiff's gait and station were normal (Tr. 230) was an observation during the actual physical examination. The allegedly contradictory statement that Plaintiff "has awkward gait due to left foot pain and this may contribute to his back pain…" (Tr. 229) is in the "history" portion of the examination, where Dr. Purswani was describing information gleaned from her study of the records of Plaintiff's treating sources, and information imparted by Plaintiff himself.

Dr. Purswani did note that the Plaintiff had some apparent pain in his left ankle, and could not stand on the left foot by itself, and "failed tandem gait." There is no doubt that Plaintiff has some difficulty with his left ankle and has had some difficulty ever since he fractured it. The ALJ found it to be a severe impairment. The issue is not whether Plaintiff constantly, or even consistently, limps. The issue is whether Plaintiff can perform work activities at the exertional level found by the ALJ. It is true that the notes of his treating physicians sometimes, but not always (see Tr. 262), noted a gait

14

disturbance relating to the left foot. But having an occasional limp, by itself, does not equate with one being disabled. The medical evidence supports the ALJ's RFC finding, including the only opinion from any examining source. That is what is required.

The Court finds substantial evidence to support the ALJ's RFC finding and his question to the VE. The Court also finds that the VE identified a substantial number of jobs which a person with Plaintiff's RFC could perform. The Court also finds that the ALJ adequately discussed his findings regarding Plaintiff's credibility and alluded to substantial evidence which supports his conclusions in that regard. Accordingly, it is respectfully recommended that Plaintiff's Motion for Summary Judgment [Doc. 14] be DENIED. It is further recommended that Defendant Commissioner's Motion for Summary Judgment [Doc. 17] be GRANTED.[1]

Respectfully submitted,

s/ Clifton L. Corker
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).